**In re Estate of Leonard Brooks**

HERRON, *J.*, May 7, 2013—

## Introduction

Darlene Melton has filed an appeal of a December 15, 2011 decree of the register of wills that revoked her letters of administration for the estate of her deceased father, Leonard Brooks. In so doing, the register also issued letters of administration d.b.n. to Angela Landers. This appeal raises the issue of whether the register of wills abused his discretion in making these rulings. For the reasons set forth below, there was no abuse of discretion by the register.

## Legal Analysis

Under the PEF code, the register of wills has the authority to grant letters of administration. 20 Pa.C.S. §§ 901 & 711(12). The register also has the authority to revoke these letters of administration, while the orphans' court has the subsequent power to remove an administrator for cause such as wasting or mismanaging the assets of an estate. *See, e.g.*, 20 Pa.C.S. §§3181 (revocation) & 3182 (removal). In issuing letters of administration, the registrar is guided by the PEF code which provides:

(b) *Letters of administration.* — Letters of administration shall be granted by the register in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:

(1) Those entitled to the residuary estate under the will.

(2) The surviving spouse.

(3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.

(4) The principal creditors of the decedent at the time of his death.

(5) Other fit persons....

20 Pa.C. S. §3155

Alternatively, the PEF code specifies who may not be granted letters of administration:

No person shall be qualified to serve as a personal representative who is:

(1) Under 18 years of age.

(2) A corporation not authorized to act as fiduciary in the Commonwealth.

(3) A person, other than an executor designated by name or description in the will, found by the register to be unfit to be entrusted with the administration of the estate. 20 Pa.C.S. §3156.

In granting letters of administration, the register is acting in a quasi-judicial capacity. *Friese's Estate*, 317 Pa. 86, 88, 176 A. 225, 226 (1934). If the register's decree issuing letters of administration is challenged by appeal to the orphan's court, that court's standard of review is

limited to determining whether the register abused his discretion. *Estate of Dodge*, 361 Pa. Super. 188, 189. 522 A.2d 77, 78 (1987); *Martin Estate*, 5 Pa. D. & C. 4th 421, 425 (Phila. O.C. 1990); *Simmons-Carter Estate*, 63 Bucks Co. Law Rep. 52, 53 (Bucks Cty. C.P. 1993), *aff'd* 434 Pa. Super. 641, 644 A.2d 791 (1994). Under ordinary circumstances, the register has the discretion to appoint an administrator "from within the class of persons eligible for that appointment." *Estate of Klink*, 743 A.2d 482, 484 (Pa. Super. 1999). The exact parameters of this review of the issuance of letters of administration by the Register is not entirely clear. Typically, a court reviewing an appeal from the register's decree appointing an administrator focuses on the record before the register to determine whether there was an abuse of discretion. *See, e.g., Simmons-Carton Estate*, 63 Bucks Co. Law Rep. at 53. Some courts emphasize that review of the register's decree for an abuse of discretion does not entail a de novo hearing. Instead they focus strictly on the record before the register. *Estate of Dodge*, 361 Pa. Super. 188, 189, 522 A.2d 77, 78 (1987) (orphans' court "refused a request for a hearing de novo and limited its review to the record established before the register of Wills"). Other courts, in contrast, have held hearings that still focus strictly on the record before the register, by taking that evidence as an exhibit at the orphans' court hearing. *Martin Estate*, 5 Pa.D & C 4th 421 (Phila. O.C. 1990). There have also been instances where courts have held hearings that consider evidence in addition to the record that was before the register. *Barrett Estate*, 21 Fid Rep. 2d 183, 185 (Carbon Cty. O.C. 2001). In such cases, if the court goes beyond that register's record and holds a hearing that considers additional evidence, the

orphans' court findings would be given the same weight and effect as a jury verdict.[1]

In the present case, the record transmitted by the register consists solely of the December 15, 2011 decree vacating the letters of administration that were granted to Darlene Melton, an inventory dated November 18, 2011 listing a bank account in the amount of $31.97, proof of publication of the letters of administration that had been granted to Darlene Melton and, most importantly, a petition for the grant of letters filed by Darlene Melton. In that petition for probate and grant of letters, Darlene Melton listed only herself as the surviving intestate heir to Leonard Brooks. The register issued letters of administration to Ms. Melton on July 18, 2011, but a few months later the register vacated those letters and granted letters of administration d.b.n. to Angela Landers on December 15, 2011. In so doing, the decree states that it is "issued solely to appoint the named fiduciary."

In appealing this December 15, 2011 decree, Angela Landers had sought to vacate register's grant of letters granted to Ms. Melton on the grounds that Leonard Brooks had other heirs whom Ms. Melton had failed to acknowledge.[2] To rebut this assertion, Ms. Melton submitted to the register Angela Landers's birth certificate which did not identify Leonard Brooks as her father but instead identified her parents as Grandville Erwin Landers and Ilene Levene Ortiz.[3]

---

1. *Estate of Klink*, 743 A2d. at 484.

2. *See, e.g.*, 12/14/12 Darlene Melton petition, ¶ 4,; 2/25/13 Angela Landers answer, ¶2.

3. 12/14/12 Darlene Melton petition, at ¶¶ 3-6 & ex. B. According to Angela Landers, the register convened a hearing on November 9, 2011 to

Angela Landers, in contrast, maintains that Leonard Brooks had four children: Della Landers, Len Landers, Angela Landers and Darlene Melton. She emphasizes that at the hearing held by the register on November 9, 2011, she presented the register with evidence that Darlene Melton had previously concealed the existence of Leonard Brooks's other children when Ms. Melton filed a petition in August 2010 with this court to have Leonard Brooks adjudicated an incapacitated person. In that petition, Darlene Melton listed only herself and Len Landers as his children.[4] In response, Angela Landers filed an answer to alert this court that Leonard Brooks had four children. In support of this claim, she presented a certification by Judge Lederer of the family court division of the Philadelphia Court of Common Pleas that in the matter of *Commonwealth v. Leonard Brooks* on April 5, 1978 "deft admits paternity for children Della (10-28-68), Len (4-11-70) & Angela (3-30-71)" In addition, Angela Landers presented documentation dated May 22, 1978 that Leonard Brooks had filed an application for social security children's benefits for Della Landers, Len Landers and Angela Landers.[5]

In the course of the incapacity proceedings, Darlene Melton explicitly challenged Angela Landers's standing on the grounds that she was not the legal child of Leonard Brooks. Upon analysis of the facts presented during the hearings and relevant PEF code provisions, this court concluded that Angela had standing to object in the

consider her challenge to the issuance of letters to Ms. Melton. 2/25/13 Angela Landers answer, ¶2.

4. 2/25/13 Angela Landers answer, ¶2 & Ex. E.

5. 2/25/13 Angela Landers answer, Ex. F.

244

incapacity hearing.[6] In making this determination the PEF code was crucial. Under the PEF code, standing in an incapacity hearing is linked to the notice provisions which require that notice must be given "to all persons residing within the Commonwealth who are sui juris and would be entitled to share in the estate of the alleged incapacitated person if he died intestate at that time...." 20 Pa.C.S. § 5511(a).

Consequently, the test to determine whether Angela Landers had standing in the incapacity hearing that this court applied is the same test the register of wills would apply to determine whether she would qualify for letters of administration as a putative intestate heir of Leonard Brooks. Under the rules of intestacy, where a decedent dies without a spouse — as did Leonard Brooks — his entire estate would pass to his issue. 20 Pa.C.S. §2103. There are, moreover, special rules for children born out of wedlock.

Where it is alleged that certain persons are the child of a deceased father, the following rule applies:

Persons born out of wedlock

(c) Child of father — For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his father when the identity of the father has been determined in any one of the following ways:

(1) If the parents of a child born out of wedlock shall

---

6. *See* 1/26/11 N.T. *In re Estate of Leonard Brooks,* O.C. No. 1309 AI of 2010, attached as Ex. K to 2/25/13 Angela Landers answer.

have married each other;

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence;

(3) If there is clear and convincing evidence that the man was the father of the child which may include a prior court determination of paternity.

20 Pa.C.S. §2107(c).

The certification of Judge Lederer that Leonard Brooks had admitted paternity to Della, Len and Angela Landers satisfied the requirement of 20 Pa.C.S. §2107(c) as "clear and convincing evidence that the man was the father of the child" as a "prior court determination of paternity." This evidence convinced this court that Angela Landers had standing vis a vis the incapacity hearing of Leonard Brooks. It would also constitute sufficient evidence for a determination by the register that Angela Landers would have the same consanguinity as Darlene Melton which is one of the factors considered in the granting of letters of administration. 20 Pa.C.S. § 3155(b)(3). Under Pennsylvania precedent, the register of necessity has the authority to determine paternity in deciding who should receive letters of administration in cases of intestacy. *Martin Estate*, 5 Pa.D. & C 4th at 425-26. Equally important, Ms. Melton's failure to acknowledge the existence of these other claimants in her petition for probate and grant of letters before the register clearly cast serious doubt on her trustworthiness in administering her

father's estate. This would be an important consideration for the register in exercising his discretion because the PEF code prescribes that "no person shall be qualified to serve as personal representative" who is "unfit to be entrusted with the administration of the estate." 20 Pa.C.S. 3156(3).

For all of these reasons, the register did not abuse his discretion in this matter. In reaching this conclusion that the Register did not abuse his discretion with his December 15, 2011 decree, the limits of this holding need to be emphasized. As the register's decree explicitly stated: "This decree is issued solely to appoint the named fiduciary." As numerous Pennsylvania cases have underscored, a ruling as to an appropriate fiduciary is not tantamount to a ruling as to the proper distribution of the estate assets. *See, e.g., Estate of Dodge*, 361 Pa. Super. at 193, 522 A.2d at 79("A determination regarding appellant's right to receive letters of administration will not be res judicata with respect to a claim that she is the decedent's widow for purposes of taking under the intestate law"). *See also Boytor's Estate*, 130 Pa. Super. 591, 198 A.484 (1938); *Maseloff Estate*, 2 Pa. D & C 2d 120, 127 (Phila. 1955).

In her appeal to revoke the letters of administration granted to Angela Landers, Ms. Melton goes on to raise issues that are more appropriate for a petition to remove Angela Landers. Consequently, this ruling is without prejudice to the filing of an appropriate petition seeking removal.